Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4968 | **DATE** | 8/22/2001 |
| **CASE TITLE** | Jack Scardina vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants the United States' motion to strike the statement of and bar testimony by Kenneth P. Byerly (Doc. 14-1, 14-2). Moreover, the court grants the United States' motion for summary judgment (Doc. 15-1). Judgment is entered in favor of the United States and against Plaintiff Jack Scardina. Ruling date of 9/27/01 stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 23 2001 date docketed | 33 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 8/22/2001 date mailed notice | |
| ETV | courtroom deputy's initials | FILED FOR DOCKETING 01 AUG 22 PM 4:59 Date/time received in central Clerk's Office | ETV mailing deputy initials | |

DOCKETED
AUG 23 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACK SCARDINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99 C 4968 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jack Scardina ("Scardina") slipped and fell outside a United States Post Office in Chicago, Illinois, on December 26, 1996. After exhausting his administrative claim, Scardina filed a negligence complaint with this court under the Federal Tort Claims Act ("FTCA") seeking damages against the United States ("the government") in excess of $50,000. The government now files a motion for summary judgment. For the following reasons, the court grants the government's motion.

## FACTS

On December 26, 1996, two to three inches of snow covered the sidewalk in front of the Canal Street entrance to the main post office at 433 West Van Buren Street, Chicago, Illinois (the "Post Office"). (Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts [hereinafter "Pl. Rule 56.1 St."] ¶ 2.) Scardina approached the entrance while carrying two postage meters, each weighing approximately fourteen pounds, one under each arm. (Deposition of Jack Scardina [hereinafter "Scardina Dep."], at 66-67.) As he prepared to ascend the stairway leading into the Post Office, Scardina's left foot slipped out from under him, causing him to fall on his left arm and

crack a tooth on the corner of the staircase. (*Id.* at 67.) After gathering himself up off the ground, Scardina claims that he looked down to discern what had caused him to slip and noticed a metal expansion joint cover underneath the snow. (*Id.* at 95.) Scardina also maintains that he observed water dripping from an overhang onto the area where he slipped. (*Id.* at 69.)

Scardina testified that he next entered the Post Office and told a security guard that he had fallen. (*Id.*) According to Scardina, the guard mentioned that several other people had slipped in the area where Scardina fell.[1] (*Id.*) Scardina submitted a claim based on his fall to the United States Post Office Claims Department on December 18, 1998. (Ex. A to Complaint.) The claim was denied by the postal service and a letter informing Scardina of the denial was sent to him on February 10, 1999. (Ex. B to Complaint.) On July 29, 1999, and prior to the expiration of the six-month period allowed for filing suit against the government under 39 C.F.R. 912.9, Scardina filed the current lawsuit. His complaint alleges that the government:

> (a) failed to maintain said buildings, premises, surrounding area, entrance and stairway in a reasonably safe and proper condition; (b) created and allowed an unnatural accumulation of ice and snow to form and exist upon the entrance and upon the metal plate or expansion joint; (c) failed to maintain said entrance, metal plate or expansion joint in a safe and proper condition by not placing any or repairing any non-skid surface upon the metal plate or expansion joint thus creating a dangerous condition; (d) failed to properly warn, inform and/or advise those lawfully on the premises of the slippery, icy and dangerous condition of said

---

[1] The government argues that any such statement of this unidentified security guard is inadmissible hearsay. (Defendant's Reply to Plaintiff's Local Rule 56.1 Statement of Material Facts ¶ 6.) Because the government does not argue lack of notice, actual or constructive, as a basis for summary judgment, the court does not find it necessary to rule on the government's objection.

entrance and stairway; (e) failed to use reasonable care in the eradication and/or removal of the slippery, icy and dangerous condition of said entrance and stairway; (f) failed to adequately construct and maintain said entrance; (g) permitted and allowed said entrance to be and remain in an unsafe and dangerous condition after [it] knew or should have known of the unsafe and dangerous condition; (h) was otherwise careless and negligent in the maintenance, ownership, operation, management, control and possession of the aforesaid building, premises, surrounding area, entrance and stairway.

(Complaint ¶ 12.)

On February 16, 2001, the government moved for summary judgment on Scardina's complaint, arguing that the evidence was insufficient to prove either (1) an unnatural accumulation of snow and/or ice, or (2) a defect in the Post Office premises that was concealed or aggravated by a natural accumulation of snow and/or ice. In response, Scardina retained Kenneth Byerly, a licensed architect, to render an expert opinion as to the condition of the premises at the time of Scardina's fall. (Deposition of Kenneth Byerly [hereinafter "Byerly Dep."], at 15-16.) In his opinion, Byerly stated:

> the condition of the Defendant's premises, including its expansion joint cover and the adjoining sidewalk, were inappropriately maintained and unreasonably hazardous . . . [because] . . . the metal expansion joint cover should have had a slip-resistant surface or a slip-resistant coating for the protection of patrons . . . . The lack of such slip-resistant surface resulted in a dangerously low coefficient of friction for foreseeable users. The nature of the hazard was increased when snow or other precipitation was present, particularly when snow covered the sidewalk and cover.

Exhibit 2 to Defendant United States' Motion to Strike Statement of and to Bar Testimony by Kenneth P. Byerly, at 005. Byerly testified in his deposition, however, that his opinions and conclusions about the conditions of the Post Office premises were based only on visual observations of those premises; in other words, he did not perform

3

any scientific tests on the expansion joint cover to demonstrate what he labeled in his opinion a "dangerously low coefficient of friction." Moreover, his visual observations were made in November 2000, almost four years after Scardina's fall. The government has moved to strike Byerly's statement and any future testimony on grounds that he has neither the experience nor the training to offer an expert opinion on the conditions of walking surfaces generally, nor is he qualified to render an expert opinion on the conditions near the entrance to the post office on the date of Scardina's fall in December 1996. Pursuant to Rule 702 of the Federal Rules of Evidence, the court grants the government's motion.

Rule 702 sets forth two requirements for the admissibility of expert testimony: (1) the expert must be qualified; and (2) the expert's testimony must consist of specialized knowledge that will help the fact finder to understand or determine a fact in issue. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993); *Smith v. Ford Motor Co.*, 215 F.3d 713, 717-18 (7th Cir. 2000). In *Buscaglia v. United States*, 25 F.3d 530 (7th Cir. 1994), the Seventh Circuit performed a Rule 702 analysis in circumstances similar to those here. Judith Buscaglia, like Scardina, slipped and fell at a United States Post Office and brought suit against the government under the FTCA. *Id.* at 531. And, like Scardina, she retained a licensed architect as an expert witness. *Id.* at 532. Buscaglia's expert, however, performed actual scientific tests on the type of floor tile on which she slipped. *Id.* Based on these tests, the expert determined that the tile had a coefficient of .32 which fell below the commonly accepted level of .5 for slip-resistant surfaces inside buildings accessible to the public. *Id.* In an

4

affidavit, the expert opined that "even when dry, the floor surface was improper for a public building, and when wet, the floor surface was even more dangerous because its co-efficient of friction would be lower still." *Id.* at 531.

The district court granted the government's motion to strike the affidavit pursuant to FED. R. EVID. 403 and 702. *Id.* at 532. The district court considered "the probative value of [the expert's] opinion very low in light of the physical differences between the dry, unwaxed tile he tested and the wet and previously waxed tile on which Buscaglia fell." *Id.* The Seventh Circuit, however, reversed this decision. Because the government did not contest the expert's qualifications, the court focused on whether (1) the circumstances under which the expert performed the test were "substantially similar" to those present at the time of the accident and (2) the subject matter of the testimony consisted of specialized knowledge that would be helpful to the trier of fact. *Id.* at 533-35. The court determined that the conditions of the test were in fact "sufficiently similar" to the conditions of the fall and that his testimony as to the slipperiness of the specific type of tile constituted specialized knowledge. *Id.* at 532.

Here, however, the analysis is slightly different, in part because the government *does* contest Byerly's qualifications. Byerly, as already mentioned, is a licensed architect. He is also a building inspector and has performed as many as 4,000 building inspections. (Byerly Dep., at 17.) In his deposition, however, Byerly admitted that only three or four of these inspections involved "determining the coefficients of friction on flooring surfaces or walking surfaces." (*Id.* at 18.) Even in these three or four inspections, though, Byerly, unlike the expert witness in *Buscaglia*, did not perform

any tests to determine this coefficient. (*Id.* at 18-19.) Byerly further admitted that he had never previously been found qualified to testify about coefficients of friction on walking surfaces. (*Id.*, at 86-87.) Scardina responds that the term "coefficient of friction" is an "obvious principle" that "simply means skid resistance [sic]." Memorandum of Law in Opposition to Defendant's Motion to Strike & Bar Testimony of Witness Byerly, at 2. This argument does little to further Scardina's cause; even if the principles behind Byerly's conclusion were "obvious," this would not excuse Byerly's aforementioned lack of qualifications to testify on the subject.[2] Based on Byerly's own

---

[2] Scardina contends that, in *Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1023 (N.D. Ind. 2000), the court held that experts need not test obvious principles within their opinions. (Memorandum of Law in Opposition to Defendant's Motion to Strike & Bar Testimony of Witness Byerly (hereinafter "Response to the Motion to Strike"), at 2.) In *Dartey*, a husband and wife sued after the husband fell from a truck tailgate when the cables supporting the tailgate allegedly snapped. 104 F. Supp. 2d at 1019-20. The plaintiffs proffered two experts, one of whom was Doctor Donald Wulpi. Wulpi had received a degree in metallurgical engineering, worked for 31 years as a metallurgist, owned a metallurgical consulting business, and regularly published articles related to metallurgy. *Id.* at 1020. He opined that (1) the metal wires supporting the tailgate fractured due to fatigue brought on by the long-term opening and closing of the tailgate, further aggravated by corrosion; and (2) the metal utilized to support the tailgate was unsuitable for long-term use and therefore the design was bound to fail. *Id.* In addition, Wulpi proposed an alternative tailgate design involving metal hinges. *Id.*

The defendant moved to exclude all of Wulpi's testimony because he lacked experience in designing tailgates or tailgate support components. The court found Wulpi qualified to testify as to the manner in which the metal cables failed, but held that "[t]estimony relating to alternative designs and the ultimate issue of design defect is beyond Wulpi's expertise and thus, does not pass muster under the standards of *Daubert* and *Kumho* [*Tire Co. v. Carmichael*, 526 U.S. 137 (1999)]." *Dartey*, 104 F. Supp. 2d at 1024. The defendant also moved to specifically exclude any testimony regarding the reason for the failure of the metal cables because Wulpi did not test his theory or submit it to peer-review. In response, the plaintiffs noted that Wulpi suggested throughout his testimony that the scientific principles involved in his opinion are "obvious" and thus, he had no need to test his own theory further. The
(continued...)

testimony, the court agrees with the government that Byerly does not have the experience or training to qualify him to render an expert opinion on the conditions of the walking surfaces in this case. Moreover, the court finds troubling the four-year lapse between Scardina's fall and Byerly's merely visual inspection of the accident site. Importantly, as Byerly acknowledged during his deposition, the expansion joints around the entrance to the Post Office were remodeled in 1998, nearly two years after Scardina's fall, but before Byerly's inspection. (*Id.*, at 84-85.) For these reasons, the court grants the government's motion to strike Byerly's statement and bar his testimony. In addition, for the reasons set forth below, the court also grants the government's motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For summary

---

[2](...continued)
court concluded that because "Wulpi applied well-established principles, based upon his education and experience, in reaching his conclusions" about the reason for the fracture, his "failure to have his conclusions tested for peer review do not cast doubt on the reliability of his opinion as to how the metal cables failed." *Id.* at 1024.

The conclusions reached in *Dartey* are not applicable to the circumstances here. First, Wulpi was a metallurgist who surely had expertise concerning the reason why the metal fractured. Byerly, although he is an architect and building inspector, has no expertise in determining the slipperiness of surfaces. Second, the *Dartey* court may have accepted the "obvious" nature of the scientific principles as a reason why Wulpi did not test his theory or submit it for peer-review; but that factor did not cause the court to admit testimony to which Wulpi was otherwise not qualified to testify. If the *Dartey* court had admitted Wulpi's testimony as to alternative designs based solely on its assessment of the scientific principles behind his suggested designs as "obvious," Scardina's citation to *Dartey* might carry more weight.

7

judgment purposes, a genuine issue of material fact is more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A] genuine issue exists when the evidence is such that a reasonable jury could find for the nonmovant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record, the court will draw all reasonable inferences in favor of the nonmovant. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Nevertheless, the court is not "required to draw every conceivable inference from the record—only those inferences that are reasonable." *Id.*

Scardina has brought this lawsuit under the FTCA. The court will apply Illinois law in this case because lawsuits under the FTCA are governed by the substantive law of the state where the accident occurred. *Hess v. United States*, 361 U.S. 314, 318 (1960); *Halek v. United States*, 178 F.3d 481, 483 (7th Cir. 1999). As a public entity, the United States is protected by the provisions of the Illinois Local Government Tort Immunity Act.[3] *See Nieves v. United States*, 980 F. Supp. 1295, 1296 (N.D. Ill. 1997) (citing *Cooks v. United States*, 815 F.2d 34, 35 (7th Cir. 1987)). To recover, then,

---

[3] The Tort Immunity Act provides, in pertinent part, the following:
[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition.
745 ILCS 10/3-102(a).

Scardina must show that the "[h]e was owed a duty of care by the United States, that a breach of this duty proximately caused h[is] injuries, and that the United States had actual or constructive notice of the allegedly unsafe condition in time to correct it." *Nieves*, 980 F. Supp. at 1297 (quoting *Stewart v. United States*, 918 F. Supp. 224, 226-27 (N.D. Ill. 1996)).

The government, in its motion for summary judgment, does not contend that it was unaware of the allegedly unsafe condition; instead, it primarily argues that it owed no duty to Scardina to protect him from the allegedly unsafe condition. In Illinois, a government entity will generally not be found liable for injuries caused by natural accumulations of ice, snow, or water on public premises. *Hankla v. Burger Chef Sys., Inc.*, 93 Ill. App. 3d 909, 910, 418 N.E.2d 35, 36 (4th Dist. 1981). Liability may arise, however, if a natural accumulation conceals or aggravates a preexisting defect in the premises, *see, e.g., McGourty v. Chiapetti*, 38 Ill. App. 2d 165, 175, 186 N.E.2d 102, 106 (1st Dist. 1962), or if a defect in the premises is found to have created an unnatural accumulation of ice or snow. *See Kozial v. Hayden*, 309 Ill. App.3d 472, 478, 723 N.E.2d 321, 325 (4th Dist. 1999). Scardina testified at his deposition that he noticed water dripping from a Post Office overhang, but he does not argue in his response that he slipped on an unnatural accumulation of ice or snow. The court thus considers any such argument waived for purposes of this litigation. *See Freeman United Coal Mining Co. v. Office of Workers' Comp. Programs*, 957 F.2d 302, 305 (7th Cir. 1992) ("[W]e have no obligation to consider an issue that is . . . not developed [ ] in a party's brief."). Instead, Scardina contends that a *natural* accumulation of snow in front of the Post

Office concealed and aggravated the allegedy defective condition of the expansion joint cover. The court is unmoved by this theory.

Scardina insists that the lack of a skid-resistant surface on the expansion joint cover rendered the joint cover defective, and that, on December 26, 1996, this defect was concealed and exacerbated by snow. Having found Kenneth Byerly's testimony inadmissible, *see supra*, the court concludes Scardina has offered insufficient support for this assertion. *See Turner v. Chicago Housing Authority*, 11 Ill. App.2d 160, 170, 136 N.E.2d 543, 548 (1st Dist. 1956) (testimony that the relevant surface is "slick," "shiny," and "slippery" fails to definitively demonstrate an unreasonably dangerous condition because "[t]hese words of description are lacking in precision of meaning."). Moreover, the cases to which Scardina primarily cites, *see, e.g., Buscaglia v. United States*, 25 F.3d 530 (7th Cir. 1994); *McGourty v. Chiapetti*, 38 Ill. App. 2d 165, 186 N.E.2d 102 (1st Dist. 1962), are distinguishable. *Buscaglia* is distinguishable for the reasons already discussed: the court concluded that the trial judge erred in excluding expert testimony that the surface slipped upon was unreasonably dangerous. *Buscaglia*, 25 F.3d at 533. *McGourty* is distinguishable for a different reason. In *McGourty*, the plaintiff fell on a concrete block that the defendant businessman had set up as a makeshift stairway. 38 Ill. App.2d at 170, 186 N.E.2d at 104. Although the court did not explicitly discuss the matter, it seems clear that its conclusion was based, in part, on the fact that the defendant had used a concrete block in a way for which it was not designed. Here, on the other hand, the expansion joint cover on which Scardina slipped was serving its expected purpose.

Scardina's fall outside the Post Office is unfortunate, but the undisputed facts of this case simply do not support a finding that the government was liable.[4] Allowing Scardina a recovery in this case becomes even more inappropriate when one considers that expansion joint covers are installed on sidewalks in the first place for the safety of pedestrians. Builders leave gaps between the segments of concrete that form a sidewalk in order to allow for the inevitable expansion and contraction of concrete that comes with seasonal changes in the temperature. Rather than subject pedestrians to continual risk of stepping in these cracks, many builders place expansion joint covers across the gaps to provide pedestrians with a seamless walking surface. *See* http://www.archart.com/html/expansion_joint_covers.html. Indeed, in researching this opinion, the court found that the vast majority of tort cases involving expansion joints were brought by plaintiffs who had injured themselves by stepping into expansion joints that were not covered by metal expansion joint covers like the one involved in this case. *See, e.g., Young v. City of New York*, 673 N.Y.S.2d 378 (N.Y. App. Div. 1998) (upholding jury verdict for plaintiff who tripped and fell as a result of stepping in an uncovered expansion joint). Essentially, then, Scardina argues that the devices used

---

[4] Consequently, the court also finds that any claim based on the government's failure to warn Scardina of the allegedly unsafe condition must fail: where the fall itself does not give rise to liability, there is no duty to warn of the conditions that may have caused the fall. *See Pytlewski v. United States*, 991 F. Supp. 1043, 1051 (N.D. Ill. 1998). *See also Newcomm v. Jul*, 133 Ill. App. 2d 918, 920, 273 N.E.2d 699, 701-02 (3d Dist. 1971) ("If liability of a business owner may not be predicated on falls resulting from natural accumulations of ice or snow it follows the business owner is not required to warn of the presence of natural accumulations of ice or snow. The duty of warning against a particular condition or hazard co-exists with the corresponding liability for the consequences or hazards of the condition if no appropriate warning is given.").

to eliminate unreasonably dangerous conditions are themselves unreasonably dangerous. While the court can conceive of situations where such a state of affairs might exist, the instant case is not one of them.[5]

## CONCLUSION

For the foregoing reasons, the court grants the United States' motion to strike the statement of and bar testimony by Kenneth P. Byerly (Doc. 14-1, 14-2). Moreover, the court grants the United States' motion for summary judgment (Doc. 15-1).

ENTER:

Dated: August 22, 2001

REBECCA R. PALLMEYER
United States District Judge

---

[5] The record suggests some other arguments Scardina could make, but by failing to present them, Scardina has waived them. For example, certain of Scardina's submissions hint that the government may be liable here because (1) the handbook for the Post Office contained a snow-removal policy that the government allegedly did not follow, see Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts, Including Additional Material Facts Omitted by Defendant (hereinafter "Plaintiff's 56.1 Response") ¶ 9; and (2) both the Building Officials and Code Administrators ("B.O.C.A.") Code and the Illinois Administrative Code require slip-resistant surfaces. See Plaintiff's 56.1 Response ¶ 10. Even if Scardina had presented these arguments, both would fail. First, a defendant's duty may be created by its voluntary course of conduct, but not merely by its internal rules or guidelines. See Pytlewski v. United States, 991 F. Supp. 1043, 1051 (N.D. Ill. 1998) (rejecting plaintiff's argument that the government's handbooks obligated it to remove natural accumulations of water) (citing Rhodes v. Illinois Cent. Gulf R.R., 172 Ill. 2d 213, 665 N.E.2d 1260 (1996)). Second, it is well settled that, in accordance with the Supremacy Clause of the United States Constitution, the activities of federal agencies, such as the Postal Service, are free from regulation by state and local governments where such regulation interferes or conflicts with federal law. See, e.g., Stewart v. United States Postal Serv., 508 F. Supp 112, 116 (N.D. Cal. 1980) (holding that Postal Service is not bound by local zoning requirements).